## C. B. PHIPPS v. W. E. SHARPS.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued January 26, 1891—Decided May 27, 1891.

(a) Plaintiff bought corporate stock from defendant, in consideration whereof the latter guaranteed in writing that the plaintiff should " not

Statement of Facts.

lose any money by his said investment," the guaranty to be in force for two years.

(b) After unavailing efforts to sell the stock, notice thereof, and demand made of defendant for a return of the money, the stock was sold at auction "for account of W. J. S., att'y" for plaintiff, and knocked down to "W. J. S., att'y" for a third person:

1. The contract was a contract of indemnity, under which it was the duty of the defendant, at the end of the period provided, to pay to the plaintiff the amount of his loss, if any, on the investment made under it.

2. When the plaintiff, in a suit to recover his loss, had proved that the stock had no market value, that he had made diligent but fruitless efforts to sell it, and had eventually sold it at public sale at a loss, it was error to order a nonsuit.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

No. 186 July Term 1890, Sup. Ct.; court below, No. 213 December Term 1888, C. P. No. 1.

On December 11, 1888, Crosby B. Phipps brought assumpsit against William E. Sharps. Issue.

At the trial, on April 29, 1890, it was shown on the part of the plaintiff that in November, 1886, the defendant owned stock of the Edgerton Electric Motor Company, and desired to sell two hundred shares thereof to the plaintiff; that Mr. Warren J. Coulston, president of the company, acted in the negotiations as the agent of both parties; that, under authority given by defendant, Mr. Coulston told the plaintiff that if he invested his money in the stock, "he would not lose anything more than his interest on his money; and, if the enterprise was not successful, at the end of two years his money would be returned to him;" that, with this understanding, the plaintiff bought the stock, and received the certificates therefor, together with the following paper:

"Philadelphia, November 22, 1886.

"In consideration of the purchase by Crosby B. Phipps of two hundred shares of the capital stock of the Edgerton Electric Motor Co. of me, William E. Sharps, for the sum of one thousand dollars, I hereby guarantee that said purchaser shall not lose any money by his said investment.

"Said guaranty to be in force for two years.

"W. E. SHARPS.          [L. S.]"

It was further shown that the stock of said company never was listed, never had a market value, and that all sales of it were private sales, induced by the relations of the parties; that the plaintiff tried to sell his stock purchased from the defendant but failed, and on November 13, 1888, he made demand of the defendant for the return of the money paid for it, and tendered the stock to him; that defendant, admitting his liability, alleged that he was unable to repay the money on account of financial embarrassment; that the stock was then sold at public sale at Thomas & Son's auction rooms " for account of William J. Smyth, att'y for Crosby B. Phipps," and was knocked down to " W. J. Smyth, att'y," for $60; that the plaintiff, though present at the sale, did not bid for the stock, nor did he authorize any one to bid for him, but the stock was bought for Mr. Coulston, realizing for the plaintiff after charges were paid the sum of $52.50.

At the close of the plaintiff's case, the court, BIDDLE, J., on motion of the defendant's counsel, entered judgment of nonsuit, with leave, etc.; exception. A rule to show cause why the judgment of nonsuit should not be taken off having been argued, the rule, on June 19, 1890, was discharged, no opinion being filed; exception. Thereupon, the plaintiff took this appeal, specifying the orders entering the judgment and discharging said rule, for error.

*Mr. William J. Smyth* (with him *Mr. Mayer Sulzberger*), for the appellant.

As to the contract evidenced by the writing, and its construction, counsel cited: White v. Smith, 33 Pa. 189; Pollock on Cont., *457; 1 Chitty on Cont., 11 Am. ed., 105; Strohecker v. Farmers' Bank, 6 Pa. 45; Williamson v. McClure, 37 Pa. 408; Addison on Cont., *186; Struthers v. Clark, 30 Pa. 210; 2 Greenl. Ev., § 262.

*Mr. Wm. Henry Lex*, for the appellee.
Counsel cited: Register v. Sellers, 4 Pa. C. C. R. 492.

OPINION, MR. JUSTICE McCOLLUM:
The appellant bought of the appellee two hundred shares of the capital stock of the Edgerton Electric Motor Company, at

five dollars a share, on the assurance of the latter that it was a good investment, and on his written guaranty that the former should not lose any money by it. It appears that the appellee was the owner of a large block of this stock, and was anxious to dispose of it, and the consideration of his undertaking to protect the appellant from loss on the investment was the sale of a portion of it to him. The guaranty, by its terms, was to remain in force two years, and it was executed and delivered and the stock was transferred and paid for on November 22, 1886. The negotiations which resulted in the sale were conducted by J. Warren Coulston, who represented both parties, held stock in the company, and was the president of it. On the trial of this issue, he testified that the stock "was never listed, and never had a market value;" that there had been occasional private sales of it, but that these "were induced by the relations of the parties." Before the expiration of the two years mentioned in the guaranty, the appellant tried to sell his stock, but could not find a purchaser for it; and on November 13, 1888, he called on the appellee, and demanded from him the sum he had paid for it. The latter, whilst conceding his liability, claimed that he was then financially embarrassed, and that he could not meet the demand until the ensuing spring. The appellant then caused the stock to be sold at public auction by Thomas & Sons, and he realized on the sale of it $52.50. At this sale the stock was purchased by W. J. Smyth for J. Warren Coulston. This suit was then brought by the appellant to recover the difference between the amount he received, and the sum he paid for the stock.

The learned judge of the court below entered a compulsory nonsuit on the ground that the appellant was a purchaser of the stock at his own sale of it, and that he had not sustained any loss. But this assumption, instead of being authorized by the evidence, was in spite of it. The memorandum of the sale made by the auctioneers did not, when explained and coupled with the other testimony in the cause, compel the inference that Smyth purchased the stock for the appellant. It showed a sale to Smyth as attorney, and the uncontradicted explanation of the memorandum was that he bought the stock as attorney for Coulston. But, in any event, the question was for the jury, and the evidence if credited by them, was sufficient to

support a verdict for the sum demanded. It showed that the appellant had parted with his stock at a public sale, after unavailing efforts to find a purchaser for it, and that his loss was the difference between what he paid for the stock and what he obtained for it. The agreement to protect the appellant from loss was not strictly a guaranty, although the parties gave it that name. It was a contract of indemnity, under which it was the duty of the appellee at the end of two years to pay to the appellant the amount of his loss, if any, on the investment. The transaction was not a pledge of the stock as security for a loan, but an unconditional sale of it at a price fixed and paid. The appellant had an option under the contract to return the stock within two years, and demand the money paid for it, but he was not bound to do so. When he proved that he had made diligent but fruitless efforts to sell the stock, and that it had no market value, it was sufficient to put the appellee on his defence.

> Judgment reversed, and venire facias de novo awarded.